Good morning, Your Honors. May it please the Court, my name is Patience Milrod. I represent the defendant and appellant, Mr. Remy. We are seeking an order from this Court vacating his conviction and remanding the matter to the District Court for retrial. In the event of resentencing, we're requesting that the District Court be required to comply with the terms of the statute and ensure that there's a complete accounting before there is an amount of restitution imposed on Mr. Remy. Can I just ask you this one question so we can dispose of that part of the argument? Yes, sir. I thought the government had conceded error in the restitution amount. Am I incorrect? You are correct. And the only question is, it seemed to me from reading Mr. McKeon's papers, and he will clarify this, is this Court, it seems to me he's asking this Court to just say, okay, this was the nature of the error, we don't have to remand. We're asking that it be remanded so that the District Court can do the arithmetic. Maybe I didn't read it correctly, but I thought that the government had confessed error and had agreed to that, that it had to go back to the District Court for reconsideration. If that's the way the Court reads it, I'm good. Okay. Thank you. I will ask counsel of the government. All right. He'll clarify it, I'm sure. With respect to the other issue, which has to do with the validity of the conviction itself, I think the papers, I'm not going to rehearse what we've given you already in the papers. What I did want to emphasize is that there is no way that this could be harmless beyond a reasonable doubt, this error. Obviously, this Court will consider de novo whether or not Mr. Rimi was actually in custody at the time of this interview with the agents. Judge Ishii's determination as to that was a legal finding, and this Court will look at the facts. The standard of review of Judge Ishii's determination under Craighead, whether the five criteria were satisfied. It is de novo, Your Honor. Those are legal inquiries, and this Court, the only function of Judge Ishii's determination was to determine who said what to whom, who was sitting where, the basic facts, the scene setting, as it were. But there's a fair amount of conflict in the testimony between your client and Mr. Oberhofer, and Judge Ishii gives us some fact-finding as to who he believes. And so as to the fine fact-finding, we defer to that unless there's clear error on that point. The only conflict, actually, I believe that Judge Ishii resolved in the testimony, was whether or not the agents threatened Mr. Rimi that they were going to take him down to the station if he didn't talk. And Judge Ishii explicitly found that both witnesses were credible. And we will ---- Well, as I read on that point, he said, well, it's possible they said it, but unlikely. I mean, I view that as he thinks more probably than not that were not said. Right. I'm agreeing with you. I'm ---- Excuse me. I'm agreeing with you that Judge Ishii found that it wasn't ---- he didn't believe that the officers threatened Mr. Rimi in the way Mr. Rimi says they did. But overall, Judge Ishii found both witnesses to be credible. Well, let's assume for a moment that you're correct about the standard of review. Craighead has five ---- excuse me, four criteria. If we review the record de novo and we conclude that it is even, two and two, what happens then? Well, one of the things that the Court will do is not restrict itself to the Craighead factors. There are additional factors in Kim. The whole point of the review that this Court will do will be to look at all the facts and apply the legal factors, whatever they may be, including ---- The totality of the circumstances argument? Is that what you're saying? Exactly. So there's length of the detention. There's whether or not there was pressure on Mr. Rimi to stay in the interview and not to leave. There's the confrontational nature of the interview, which is really Agent Oberhofer's own testimony makes it very clear. He uses the word confront numerous times. Mr. Rimi was in tears. He had angina. They had to go get him his nitroglycerin. This doesn't really seem like something where there's a factual issue. This is Agent Oberhofer's testimony. So not only Mr. Rimi's testimony. So when you take all the various factors that the Court can apply, and this Court is not restricted to the factors that Judge Ishii used. So when this Court looks at all the factors and makes a determination about them, this Court has the authority, and we submit it will be the logical thing for this Court to do, to determine that, in fact, taking all of the circumstances into account, Mr. Rimi was absolutely in custody. He was unable to be here today because he has one of those scooters, and he's a very, very large man. He's not ambulatory. They did not have to put a gun to his head or put him in handcuffs in order to keep him where he was, and they exercised control over his physical movements, and he was in custody. That's an interesting concept. I don't think I've seen that in our case law. Are you arguing that when a person is – I've never seen your client. I have no idea, but based on your description, let's say if a person is grossly obese and not able to move much, what role does that play in whether a person is in custody? Well, it is one factor, of course, only one factor, and the question is can the person get up and leave, and when you're – He did go to the restroom, did he not, unaccompanied? No, no, he did not. He said he wanted to, and they told him he couldn't. They said he never asked, so he did not get up and go to the restroom. He got up – Did he have to do anything, go to call his wife or something? No, his wife called him, and they allowed him to answer the phone. As I recall the testimony, it's not clear who called whom. Actually, Mrs. Remy testified, and Mr. Remy testified, and I believe Agent Oberhofer also testified that it was an incoming call. Oberhofer says he couldn't remember, I think. Okay. But I'll – let's assume that she called him. Right, she did call him. They allowed him to take the call. He did get up once. Did he go in the other room? No, he went to another part of the kitchen to get a piece of paper, and they followed him. That was his testimony that they – and they testified, I believe, that they followed him. And – but he didn't go very far. So – and they wanted him. This was his paperwork. I mean, they were sort of – they had these dueling sets of papers. Did I answer all your questions? I think you did. Let's hear from the government, and you've got some time to respond. Thank you very much. Thank you, Your Honor. Justice of the United States, Mark McKeon for the United States. I'd like to address the restitution issue very quickly before getting to the Miranda issue. First, in our brief, we do ask that the court reverse the order of restitution and remand to the district court to impose an order that reme pay $158,000 Why should we enter the number? Why shouldn't we let the district court do the numbers? Because that is the evidence, the undisputed evidence that was before the district court. Then the district court shouldn't have any trouble doing the math. That's fine. He's a great mathematician. Yes. There's a point, though, that's being made here that – this is one of the two points that I wanted to make on the restitution, which is a complaint that somehow the probation office didn't do in accounting and that somehow the judge didn't do in accounting. The fact is, Your Honor, the evidence was undisputed. The evidence was known to the government. The evidence was known to the defense. There was nothing that this requirement is for the purpose, as the cases say, of protecting victims. There's no reason that they could not have put on whatever evidence they had to dispute this. With respect, counsel, the government confesses error in the amount of the restitution order, right? Correct. So who – why do you care whether we do the math or Judge Ishii does the math? I don't care who does the math, but what I don't want is an evidentiary hearing reopening the whole issue when they had the opportunity to put on evidence at the sentencing and chose not to. That should be at Judge Ishii's discretion as to whether or not there was appropriate opportunity to below. I'm in a very bad position to make that judgment. That would – Judge, I think on the record it's clear, though, that they had the opportunity at sentencing to decide whether or not to put on evidence to dispute this amount and chose not to. But the second point is there's a suggestion in the reply brief that this somehow could affect the sentencing guidelines. That was not raised as an issue on appeal, and it was raised for the first time in one sentence in the reply brief. You know, my math is 10 minus 5 equals 2. Do you still want me to do the math? I would defer to your two colleagues on that question, Your Honor. Well, he's a professor from Berkeley Law. Wasn't there really a factual dispute about how much aid and assistance the defendant actually got? There was no dispute at trial. The evidence was undisputed that there was the testimony of the expert. If there had been a dispute, there was an opportunity for the defendant at the time to put on the evidence at the time of sentencing. But what I don't want to see happen here, and this is my – the point I was trying to make about the sentencing, is that I don't want to see this remanded for the purpose of reopening the whole issue, because even if this actual loss amount is zero, it would not change the sentencing guidelines in this case. But nobody's even pled that, have they, counsel? It's certainly not raised in the brief on appeal. It is raised in one sentence for the first time in the reply brief. Well, then it's waived then. That's our position. So the reality is, does the government have any objection if we on this issue send the issue back to Judge Ishii with the simple instruction that we are reversing and remanding solely for the purpose of the district court determining the appropriate amount of the restitution? Is that okay with the government? That's okay with the government. Okay. Confessions of error by the government at the appellate level are always appreciated, but if those confessions would be made at the trial level, it would sure conserve a lot of judicial resources. I would agree, Your Honor, and I'm – it's unfortunate that nobody noticed this mistake at the trial court, the judge, the probation officer, or any of the counsel or us. And it would have been better had we noticed it then and not now. On the confession – on the confession issue, Your Honor, this issue was analyzed under Craighead before the district court because the defendant had raised a motion to reopen the motion to suppress based on the recent decision of Craighead. And I don't think that there is a case that could be more different than Craighead, which is the seminal case dealing with interrogations in a house. Craighead emphasizes that the key factor is whether it's a police-dominated atmosphere and whether there is some sort of restraint on the communication ability of the defendant. The district court found that neither of those circumstances were present in this case. In Craighead, there were eight officers wearing raid vests with guns drawn. It was during a search. Here there were two officers in plainclothes. They were from a single agency. They were invited into the home by the defendant who said, come in, brothers, told them where to sit. That's what Mr. Oberhofer's testimony is. That was what Mr. Oberhofer's testimony was. Now, Mr. Doremi's testimony didn't quite include come in, brothers. No, it didn't quite include brothers, but it did include that – Consensual entry. It clearly included that. I'm sorry? It clearly included a consensual entry. That's correct, Your Honor. And it was Oberhofer's testimony that that was what he said when he invited them into the house. To follow up on Judge Fletcher's earlier question to opposing counsel, with respect to disputed issues of fact, this one seemingly being one of them, what is the standard of review that we apply? Is it abuse of discretion? Is it clear error? Is it de novo review? What are we doing with respect to disputed facts? Disputed facts, it would be clear error as to factual findings. And that's what Judge Fletcher was saying. As to whether or not, when all those factors are considered, there is in custody or not custody, that's de novo. What do we do with, and this is a fair amount of the record here, conflicting narratives between what the agent says and what Mr. Doremi says, and the district judge didn't resolve the narrative. I mean, you know, it's just sitting there. Well, I think there's a lot of it that's just sitting there. There's a lot of it that's just sitting there, but the judge did make. No, no. But I know what he did do. But what I'm asking is, are we supposed to take all of the evidence in his favor when there's no resolution of it by the district judge? What are we supposed to do with it? I think it's a de novo review, Your Honor, at that point. De novo what? I mean. But I think you have to look at it. I disagree that the district court did not, the district court didn't address and look at each and every inconsistency. But what the district court did say is, looking at all the evidence, there were no threats and there were no implied threats. The defendant was not isolated from the world and held incommunicado. And those are all things that the district court did say, which I think addresses these issues. Whether or not the defendant asked to go to the restroom or not, the district court didn't resolve those. And some of those things, you know, this is a totality of the circumstances question as to whether someone feels free to leave or, in the case of a home, feels free to tell the other people, time for you to leave now. I don't want to talk anymore. All these things feed into it. If he's told, you stay right there, you're not moving, you can pee in your pants, that's different from, yes, please go to the bathroom and come back when you're  Now, on those issues where we've had conflicting testimony, I ask you again, what are we supposed to do? Who do we believe for purposes of our de novo review? I think for purposes of the de novo review, you have to accept the finding of the district court that there were no threats or implied threats, which I think would include No, that's not my question. Okay. What do I do, for example, with the conflict in the testimony between allowing to go to the bathroom, not allowed to go to the bathroom? I think the court Because that might make a difference to the analysis. Well, unfortunately, the district court didn't resolve the credibility issue, so there's nothing other than a de novo review. That's exactly where I'm starting, and that's not the answer to my question. What am I supposed to do with those instances where the district judge did not resolve it? Who am I supposed to believe as I try to figure out what the situation was? And particularly, given the fact that the demeanor of the witnesses may play a key role in determining what's true. Isn't that more appropriately the action or a decision of a district court where you can have an evidentiary hearing, see people, observe their demeanor, look at their body language? We're at a great disadvantage as a court of appeal looking at a cold record. As Judge Fletcher pointed out there, certainly if the district court resolves something, then we have something to deal with. But if the district court has not resolved a number of issues that are key in making a determination of the totality of the circumstances, isn't the appropriate thing for us to do to send it back to the district court so the district court can have the appropriate evidentiary hearing and make a determination on those conflicted issues? I don't think the district court in resolving this motion is required to make a factual finding on each and every area where there's a dispute or whether there's some discrepancy between the testimony. What the district court is required to do is to determine whether based on the totality of the circumstances, the stories told, there was custody or not custody. And the court did that. Counsel, don't we have legions of cases where there are motions to suppress where because we don't have enough information to make a determination that we send these back to the district court? I'm sure there are those cases, but I don't think this is one of them, Your Honor. In this case, the judge was quite clear in his finding that no one threatened the defendant, that no one made an implied threat against the defendant, that this was not a police-dominated atmosphere, and that he was not held incommunicado from the world. Under Craighead, under the cases, that's what the court needs to determine, de novo, that this was not a custody situation. Okay. You're slightly over time, and we apologize for doing that to you. Thank you. Taking the last question first, we respectfully submit that it is not necessary to – if you have to remand, we're not going to argue with that, of course, but it's not necessary to do that. At the bottom of our brief, beginning at page 20 and over to the middle of page 22, there's a list of uncontested facts, facts that are nobody disputes. There were no Miranda warnings. The interrogation lasted for two hours. Mr. Remy was – No, even that's contested. I'm sorry? Oberhofer says it's an hour and a half. Actually, at the – he testifies hour and a half to two hours, and at the trial – No, he testifies an hour and a half. At the trial, he – I'm sorry. The trial, he testified it was two hours. Oh, on that part, I didn't – I just read the suppression hearing. Okay. So there's – you know, but he's talking about the same interview. So I didn't – you know. Okay. So there are – there are uncontested facts on the basis of which this Court can find using not only Craighead but also Kim and Bassagnani. This Court can find that this was a custodial inquiry. So if I understand you correctly, Counsel, you're saying you would like this Court, as apparently would the government, to make a determination here you are really not happy with our sending it back to the district court any more than the government is. I have no problem with this Court sending it back to the district court. I understand that, but – I'd be happy with that. Your preference, your strong preference is that we decide this issue, right? Well – If you're going to win. Let's see. I forgot my crystal ball. So I'm – Did you see that? You know, I am not – I was not trial counsel. I'm confident that if we were to have a rehearing at the district court, and actually it wouldn't be Judge Ishii, it was Judge Wanger who tried the case, and we'd be back before him, I'm satisfied that we would win the motion. So I'm happy to have you decide it, because then we have the word from kind of further up on the food chain, and I would like that. But if the Court decides not to do that, I'm also happy with that. So with respect to the – are there any other questions about the interview and the Miranda issue? With respect to the restitution question, the – I think you won on that one. It's going back. I appreciate that. The only – I guess my only – the only thing I needed to say was that there actually is a factual dispute now at the district court based on the pleadings that we filed and the motion for release pending appeal. And so there are – there's actually additional evidence, as Judge Todd referred to, about the need to do a complete accounting. So if we go back, I hope we get to do that. Thank you. Thank you. Thank you both sides for useful arguments. The United States versus RIMI now is submitted for decision.
judges: Todd, Fletcher W. , Smith M.